IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:
JUNIOUS J. WIGGINS and           : Bk. No. 1-02-05942
LULA MAE WIGGINS,
         Debtors                 :

                                 :
LAWRENCE G, FRANK, Esquire
Chapter 7 Trustee,               :
         Appellant
                                 :
         vs.                       CIVIL NO. 1:CV-05-2557
                                 :
JUNIOUS L. WIGGINS, Agent of
Wiggins Renovation Company,      :
LULA MAE WIGGINS,
         Appellees               :


*M E M O R A N D U M*

I.   *Introduction*.

This is a Chapter 7 bankruptcy case converted from Chapter 13. The debtors are Junious J. Wiggins and Lula Mae Wiggins, husband and wife. The Trustee has appealed the bankruptcy court's order of November 1, 2005, which denied his objections to certain exemptions Debtors claimed from the estate.

The main issue presented is whether Mrs. Wiggins's IRA account is exemptible under 11 U.S.C. § 522(d)(10)(E). In *Rousey v. Jacoway*, 544 U.S. 320, 125 S. Ct. 1561, 161 L.Ed.2d 563 (2005), the Supreme Court said that IRAs are exemptible under that provision, but some courts in the Third Circuit continue to adhere

to *In re Clark*, 711 F.2d 21 (3d Cir. 1983), on the basis that *Rousey* did not address *Clark*'s requirement that an IRA is exemptible only if the debtor was receiving payments under the IRA without penalty (or, based on a later Third Circuit case, if not receiving payments, at least eligible to receive them without penalty).[1]

The Trustee raises two other issues: (1) even if the IRA were exempt under *Rousey*, it was not necessary for Mrs. Wiggins's support, and (2) the bankruptcy court erred in ruling that Debtors had not committed fraud in their original schedule of assets and that their fraud should be punished by refusing Debtors an exemption for Mrs. Wiggins's IRA.

II.   *Jurisdiction and Standard of Review*.

We have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a).  We have plenary authority to review the bankruptcy court's legal rulings but cannot disturb its factual

---

[1] This issue will not remain a live one for long.  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, P.L. No. 109-8, Title II, § 224(a)(2)(B), enacted April 20, 2005, added subsection (d)(12) to section 522.  Subsection (d)(12) exempts IRAs beginning on the effective date of the act, October 17, 2005, *see* P.L. No. 109-8, Title XV, § 1501. Specifically, that new subsection exempts: "Retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."

findings unless it committed clear error. *See In re Schick,* 418 F.3d 321, 323 (3d Cir. 2005).

III. *Background*.

In October 2002, Debtors filed a Chapter 13 Petition. In pertinent part, on Debtors' original Schedule B, they listed certain of Mrs. Wiggins's assets and described them as follows: (1) $14,000 in a "securities and money market fund - Prudential"; and (2) $79,297 in a "retirement fund."[2] Debtors also listed three other accounts as IRA accounts, one owned by Mrs. Wiggins and two by Mr. Wiggins. On Schedule C, Debtors claimed the retirement fund was exempt under section 522(d)(10)(E). In February 2004, Debtors converted their case to a Chapter 7 one.

The Chapter 7 Trustee filed objections to Schedule C, in part challenging the $79,297 retirement fund as exempt under section 522(d)(10)(E).[3] Debtors filed an amendment to Schedule B, listing for the first time Mrs. Wiggins's anticipated pension from the state of Pennsylvania and giving it an unknown current value.

---

[2] The "retirement fund" is the IRA account at issue.

[3] Debtors challenged the objections as untimely on the ground they should have been raised while the case was still in Chapter 13. We recently affirmed the bankruptcy court's decision that they were timely. *See Wiggins v. Trustee Lawrence G. Frank* (*In re Wiggins*), No. 1:CV-05-2628 (M.D. Pa. April 13, 2006)(Caldwell, J.).

3

They also filed an amendment to Schedule C, asserting that the pension was exempt from the estate under section 522(d)(10)(E).

In June 2005, the bankruptcy court held a hearing on the Trustee's objections.  Debtors testified to certain inaccuracies for the other accounts listed as IRAs and to the nature and history of Mrs. Wiggins's $79,297 "retirement fund," now recognized to be an IRA.  The account had a value of $93,873.17 at the time of the hearing.

On November 1, 2005, the bankruptcy court filed an opinion denying all of the Trustee's objections.  The court ruled that *Rousey* had implicitly overruled *Clark* so that Debtors did not have show that they were eligible to withdraw from Mrs. Wiggins IRA account without penalty before claiming it exempt under section 522(d)(10)(E).  The court then determined that the account was reasonably necessary for Debtors' support, as also required by section 522(d)(10)(E).  The court also found that Debtors had not committed fraud in their original Schedule B listing of personal property.  The court did, however, conclude that Debtors had miscalculated the amount of their exemption under 11 U.S.C. § 522(d)(5) and ordered them to turn over $8,408.42 to the Trustee.

IV. *Discussion*.

    A. Rousey *Overrules* Clark.

The main issue presented is whether Mrs. Wiggins's IRA qualifies for exemption under section 522(d)(10)(E). In pertinent part, that section allows a debtor to exempt:

> (10) The debtor's right to receive
>
>   (E) a payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, . . . .

11 U.S.C. § 522(d)(10)(E).

In *In re Clark*, 711 F.2d 21 (3d Cir. 1983), the Third Circuit held that money deposited in a Keogh retirement plan did not qualify for the exemption because at the time the bankruptcy proceedings were initiated the debtor, then 43 years old, was not eligible to withdraw funds from the account without paying a ten percent penalty. The funds were available without penalty only when the debtor had reached the age of 59 and 1/2, had died or was disabled. The court characterized the "general purpose of the exemption provisions" of the bankruptcy statute as giving the debtor "a fresh start," *id.* at 23, and stated:

> The exemption of present Keogh payments, to the extent they are necessary for the support of the debtor, is consistent with this goal. The exemption of *future* payments, however,

5

> demonstrates a concern for the debtor's long-
> term security which is absent from the
> statute.

*Id.* (emphasis in original).  The court of appeals then cited with approval *Matter of Kochell*, 26 B.R. 86 (Bankr. W.D. Wis. 1982), where the bankruptcy court refused to exempt a pension plan for a 44-year-old debtor, "a doctor in apparent good health," who could not demonstrate that he needed the amounts in the plan "to alleviate present rather than long-term needs."  711 F.2d at 23.

IRAs have similar limitations on withdrawals so, consistent with *Clark*, bankruptcy courts in the Third Circuit have refused to exempt amounts in an IRA when the debtor was not presently entitled to receive payments without penalty.[4]  See *In re Haney*, 316 B.R. 827, 831 (Bankr. E.D. Pa. 2004); *In re Scholl*, 1998 WL 546607 at *3 (Bankr. E.D. Pa. 1998); *In re Gralka*, 204 B.R. 184, 189 (Bankr. W.D. Pa. 1997); *In re Snyder*, 206 B.R. 347, 350 (Bankr. M.D. Pa. 1996).

In *Rousey v. Jacoway*, 544 U.S. 320, 125 S. Ct. 1561, 161 L.Ed.2d 563 (2005), the Supreme Court held that assets in an IRA did qualify for the exemption under section 552(d)(10)(E), taking up the issue to review the Eighth Circuit's reasoning that an IRA did not qualify because the debtor could remove funds from the

---

[4] In *Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir. 1991), the court of appeals stated that a debtor was possibly entitled to the exemption for an IRA that she was eligible to withdraw from without penalty although she was not currently doing so.

6

account without regard to age or any of the other qualifying factors in section 522(d)(10)(E), as long as the debtor was willing to pay the ten percent penalty for early withdrawal.

The Supreme Court decided that an IRA met the two requirements of section 522(d)(10)(E) pertinent to its inquiry: a right to receive payment from (1) "a stock bonus, pension, profitsharing, annuity or similar plan or contract" (2) "on account of illness, disability, death, age or length of service." 11 U.S.C. § 522(d)(10)(E).[5]

Rejecting the Eighth Circuit's reasoning on the second requirement, the Court decided that payment from an IRA would be "on account of" age, or any of the other factors, despite the ten percent penalty for early withdrawal, because experience showed that the penalty effectively limited access to IRA accounts until the account holder was 59 and 1/2. 544 U.S. at ___, 125 S. Ct. at 1567, 161 L.Ed.2d at 571-572. The Court then held that an IRA met the first requirement, that the account be "a stock bonus, pension, profitsharing, annuity or similar plan or contract."

An IRA did not qualify as any of the specific plans mentioned in the statute, so it had to qualify as a "similar plan or contract". The Court decided that to be similar, an IRA had to

---

[5] As we quoted above from section 522(d)(10)(E), the third requirement is that the payment is exempt only "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

7

"share characteristics common to the listed plans or contracts." 544 U.S. at ___, 125 S. Ct. at 1568, 161 L.Ed.2d at 573. The Court defined the latter as follows:

> A profitsharing plan, of course, is [a] system by which employees receive a share of the profits of a business enterprise. Am. Hert. 1045. Profitsharing plans may provide deferred compensation, but they may also be cash plans in which a predetermined percentage of the profits is distributed to employees at set intervals. J. Langbein & B. Wolk, Pension and Employee Benefit Law 48 (3d ed. 2000). A stock bonus plan is like a profitsharing plan, except that it distributes company stock rather than cash from profits. *Id.,* at 49. A pension is defined as a fixed sum . . . paid under given conditions to a person following his retirement from service (as due to age or disability) or to the surviving dependents of a person entitled to such a pension. Webster's 3d 1671. Finally, an annuity is an amount payable yearly or at other regular intervals . . . for a certain or uncertain period (as for years, for life, or in perpetuity). *Id.,* at 88.

544 U.S. at ___, 125 S. Ct. at 1568-69, 161 L.Ed.2d at 573-74.

The Court then stated:

> The common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation. This understanding of the plans' similarities comports with the other types of payments that a debtor may exempt under § 522(d)(10) -- all of which concern income that substitutes for wages. See, *e.g.,* § 522(d)(10)(A)("social security benefit, unemployment compensation, or a local public assistance benefit"); § 522(d)(10)(B)("a veterans' benefit"); § 522(d)(10)(C)("disability, illness, or unemployment benefit"); § 522(d)(10)(D) ("alimony, support, or separate maintenance").

8

544 U.S. at ___, 125 S. Ct. at 1568-69, 161 L.Ed.2d at 573-74.

The Court then decided that an IRA also had this common feature:

> Several considerations convince us that the income the Rouseys will derive from their IRAs is likewise income that substitutes for wages. First, the minimum distribution requirements, as discussed above, require distribution to begin at the latest in the calendar year after the year in which the accountholder turns 70 1/2. Thus, accountholders must begin to withdraw funds when they are likely to be retired and lack wage income. Second, the Internal Revenue Code defers taxation of money held in accounts qualifying as IRAs under 26 U.S.C. § 408(a)(2000 ed. and Supp. II) until the year in which it is distributed, treating it as income only in such years. §§ 219, 408(e)(2000 ed. and Supp. II). This tax treatment further encourages accountholders to wait until retirement to withdraw the funds: The later withdrawal occurs, the longer the taxes on the amounts are deferred. Third, absent the applicability of other exceptions discussed above, withdrawals before age 59 1/2 are subject to a tax penalty, restricting preretirement access to the funds. Finally, to ensure that the beneficiary uses the IRA in his retirement years, an accountholder's failure to take the requisite minimum distributions results in a 50-percent tax penalty on funds improperly remaining in the account. § 4974(a). All of these features show that IRA income substitutes for wages lost upon retirement and distinguish IRAs from typical savings accounts.

544 U.S. at ___, 125 S. Ct. at 1569, 161 L.Ed.2d at 574. The Court thus concluded that the Rouseys' IRAs qualified for the section 522(d)(10)(E) exemption, having fulfilled both of the requirements at issue, "they confer[red] a right to receive

payment on account of age and they [were] similar plans or contracts to those enumerated in § 522(d)(10)(E)." 544 U.S. at ___, 125 S. Ct. at 1571, 161 L.Ed.2d at 576.

Significantly for the instant case, in the course of deciding *Rousey*, the Court also discussed how the plans or contracts enumerated in section 522(d)(10)(E) differed from each other:

> [T]he plans are dissimilar in other respects: Employers establish and contribute to stock bonus, profitsharing, and pension plans or contracts, whereas an individual can establish and contribute to an annuity on terms and conditions he selects. Moreover, pension plans and annuities provide deferred payment, whereas profitsharing or stock bonus plans may or may not provide deferred payment. And while a pension provides retirement income, none of these other plans necessarily provides retirement income.

544 U.S. at ___, 125 S. Ct. at 1569, 161 L.Ed.2d at 574. Then, as noted above, the Court decided that the salient feature was that they all provided income that substituted for wages and because an IRA also had this feature, it could qualify for the exemption.

Debtors here argue that Mrs. Wiggins's IRA qualifies for the exemption because in *Rousey* the Supreme Court held that IRAs meet the statutory exemption requirements. They further argue that *Clark* is no longer good law in light of *Rousey* because *Rousey* did not impose *Clark*'s additional requirement that the account holder had to be withdrawing funds from the account without paying

10

the ten percent penalty or at least under *Velis, supra*, be eligible to do so, even if she were not actually withdrawing funds.

Along with the bankruptcy judge in this case, at least one other bankruptcy judge has agreed with Debtors' position. *See In re Booth*, 331 B.R. 233, 236 (Bankr. W.D. Pa. 2005). However, other bankruptcy judges disagree. See In re Benson, 2005 Bankr. Lexis 2760 (Bankr. W.D. Pa. June 3, 2005); *In re Reutzel*, 2005 Bank. Lexis 2759 (Bankr. W.D. Pa. Aug. 30, 2005)(following *Benson*), as does at least one district court, *Skiba v. Auman*, 2006 WL 278153 (W.D. Pa. Feb. 3, 2006). These courts continue to follow *Clark* on the reasoning that *Clark*'s requirement was not presented in *Rousey* nor addressed by the Court in that case. This is essentially the Trustee's position, that *Clark* controls here because *Rousey* did not address, as *Clark* did, whether an IRA had "to be in pay status or pay eligible in order to be exemptible." (Appellant's Br. 11).

We agree with the bankruptcy court that *Clark* is no longer good law in light of *Rousey*. We cannot "lightly abjure" a binding decision of the court of appeals, *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 319 (M.D. Pa. 2004), but when the decision has been "undermined" by a later decision of the Supreme Court, we are obligated to recognize that the circuit case has

been overruled.  *Id.*  An implicit overruling is sufficient.  *Id.*
So is an inconsistency in the holdings.  *Finch v. Hercules, Inc.*,
865 F. Supp. 1104, 1121 (D. Del. 1994).

We cannot see how *Clark* can be applied consistently with
*Rousey*.  *Clark* focused on the broad purpose of the exemption
provisions to provide a "fresh start" for the debtor.  In this
light, a fund providing payments only in the long term was not
necessary for the support of the debtor and hence not exemptible
unless the debtor was currently receiving payments (or under *Velis*
eligible for payments).  On the other hand, *Rousey* focused
narrowly on the statutory language itself and explained that the
types of plans or contracts exemptible under section 552(d)(10)(E)
as "similar" to those specifically mentioned in the section are
those that provide income that substitutes for wages.  No other
limitation is imposed, and no higher purpose of the Bankruptcy
Code is invoked into play.  And, of course, the Court specifically
detailed just how an IRA does provide income that substitutes for
wages and hence is exemptible.

Significantly, the Court noted the ways that the plans
or contracts mentioned in section 552(d)(10)(E) differed from each
other, but did not include those differences in its analysis of
what constitutes a "similar plan or contract" under the section.
Some of those differences shed some light here.  Pension plans and
annuities provide deferred payment, but profitsharing and stock

bonus plans do not, and a pension provides retirement income, but none of the other plans necessarily do.  544 U.S. at ___, 125 S. Ct. at 1569, 161 L.Ed.2d at 574.  In other words, the factor essential to the Third Circuit's rule, whether the plan or contract provides for immediate payments or deferred payments (or deferred payments by way of retirement income), is immaterial in the Supreme Court's approach, which looks only to the elements that the plan or contract at issue have in common with the statutorily enumerated arrangements.  Hence, we agree with the bankruptcy judge that *Rousey* implicitly overruled *Clark*, and respectfully disagree with courts that have decided that *Clark* maintains its vitality.

> B.  *The Bankruptcy Court Properly Analyzed Whether the IRA Was Reasonably Necessary for the Support of the Debtors*.

As noted, section 552(d)(10)(E) imposes a third requirement.  Even if an IRA is exempted, it is only exempted "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."  The Trustee argues that the bankruptcy court's decision that Mrs. Wiggins's IRA was necessary for Debtors' support was erroneous for the following reasons.  First, section 552(d)(10)(E) is silent about the future needs of a debtor, and Mrs. Wiggins testified Debtors can meet their current

13

expenses without the IRA. Second, Mr. Wiggins is not a dependent of his wife, as also required by the section.

The Trustee cites no authority to support his contention that only the current needs of a debtor can be considered under this prong of section 552(d)(10)(E). In making the determination that the IRA was necessary for Debtors' future support, the bankruptcy court relied on the "generally-accepted factors first identified in *In re Flygstad*, 56 B.R. 884, 889-90 (Bankr. N. D. Iowa 1986)." (Doc. 2, part 1, opinion of the bankruptcy court, dated Nov. 1, 2005, at p. 10). Among other things, those factors include the debtor's "present and anticipated living expenses" and her "present and anticipated income," both of which look to the future. We therefore reject this argument.

The Trustee's second argument also lacks merit. As Debtors point out, section 522(a)(1) provides that a "'dependent' includes spouse, whether or not actually dependent . . ." Thus, the bankruptcy court properly took Mr. Wiggins's situation into account in determining under section 522(d)(10)(E) that Mrs. Wiggins's IRA was "reasonably necessary for the support of the debtor and any dependent."

    C.  *The Bankruptcy Court's Finding That Debtors Did Not Commit Fraud Was Proper*.

The Trustee argues that Debtors committed fraud when filing their original schedules listing Mrs. Wiggins's $79,297 IRA

14

account and that they should forfeit the IRA as a penalty. The Trustee claims fraud because the IRA was originally listed as a "retirement fund" rather than as an IRA although other IRAs were listed so Debtors knew what IRAs were. Additionally, Debtors failed to list Mrs. Wiggins's pension from the state of Pennsylvania. From all of this the Trustee argues that Debtors intended to omit a significant asset from their schedules, either the IRA or the state pension.

We reject this argument. As Debtors note, fraud is a factual issue, *see In re Hilley*, 124 Fed. Appx. 81, 83 (3d Cir. 2005)(nonprecedential), and the bankruptcy court was in a position to assess the credibility of Debtors. Our review of the record indicates the bankruptcy court's finding that no fraud was committed was proper. In any event, there is certainly no basis for us to decide that the bankruptcy court committed clear error in making its finding, the standard we must apply as an appellate court reviewing findings of fact.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 25, 2006

```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


IN RE:
JUNIOUS J. WIGGINS and          : Bk. No. 1-02-05942
LULA MAE WIGGINS,
         Debtors                :

                                :
LAWRENCE G, FRANK, Esquire
Chapter 7 Trustee,              :
         Appellant
                                :
         vs.                       CIVIL NO. 1:CV-05-2557
                                :
JUNIOUS L. WIGGINS, Agent of
Wiggins Renovation Company,     :
LULA MAE WIGGINS,
         Appellees              :
```

*O R D E R*

AND NOW, this 25th day of April, 2006, the order of the bankruptcy court of November 1, 2005, is hereby affirmed.


                                    /s/William W. Caldwell
                                    William W. Caldwell
                                    United States District Judge